Filed 3/1/21  P. v. Tapia CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D077113 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN393883) |
| JAIME G. TAPIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, David G. Brown, Judge.  Affirmed as modified.

Susan K. Shaler, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos, Seth M. Friedman, and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted appellant Jaime G. Tapia of kidnapping during a carjacking (Pen. Code, § 209.5, subd. (a)),[1] carjacking (§ 215, subd. (a)), kidnapping (§ 207, subd. (a)), assault with a firearm (§ 245, subd. (a)(2)), willful infliction of corporal injury to a spouse or partner (§ 273.5, subd. (a)), two counts of making a criminal threat (§ 422), and carrying a loaded firearm with the intent to commit a felony (§ 25800). The jury also found true allegations that Tapia personally used a firearm in the commission of kidnapping during a carjacking, carjacking, kidnapping, and willful infliction of corporal injury, pursuant to sections 12022.5, subdivision (a), 12022.53, subdivision (b), and 12022, subdivision (b)(2). The trial court sentenced Tapia to a determinate term of 14 years 4 months, followed by an indeterminate term of seven years to life.

On appeal, Tapia contends that the trial court erred in denying his request to modify the pattern instruction on the firearm use allegations and instruct on accident as to those allegations. He further contends reversal is required due to prosecutorial misconduct during closing argument. On these contentions, we find no reversible error. However, we agree with Tapia and accept the Attorney General's concession that the carjacking and kidnapping convictions must be vacated because they are lesser included offenses of kidnapping during a carjacking. We also agree with the Attorney General that the trial court imposed an unauthorized sentence by neglecting to impose, but stay, one of the firearm use enhancements despite the jury's true finding. Because the trial court either has no discretion regarding these sentencing errors or otherwise indicated how it would exercise its discretion,

---

[1] All further undesignated statutory references are to the Penal Code.

we modify the judgment on appeal to correct the sentencing errors. In all other respects, the judgment is affirmed as modified.

FACTUAL BACKGROUND[2]

Tapia met I.A.[3] in April 2018. After several months of friendship, the relationship became romantic. The budding romance was immediately unstable, fraught with arguments, and later, violence. Tapia was jealous and repeatedly accused I.A. of cheating on him and being promiscuous. Despite the verbal and physical abuse, I.A. remained in the relationship because she wanted to help Tapia overcome his substance abuse.

Tapia owned two guns, a revolver and a gun I.A. described as an "Uzi." On multiple occasions, Tapia would point the guns at I.A. or threaten to shoot her. He would also hit and choke her. He twice slashed the tires on her car with a knife.

In a particularly violent incident in early November 2018, Tapia accused I.A. of cheating on him and began to pull her hair and punch her in the face. He put his "Uzi" against her stomach and pushed his revolver into her mouth. He then took the revolver out of her mouth, spun the revolver's cylinder, put the gun to her head, and pulled the trigger. Tapia continued to play his game of Russian roulette with I.A. by alternately holding the gun to

---

[2]    For purposes of this section, we state the evidence in the light most favorable to the judgment. (See *People v. Banks* (2015) 61 Cal.4th 788, 795.) Tapia does not challenge the sufficiency of the evidence to support his convictions and, accordingly, we provide only a brief overview of the evidence. Additional factual and procedural background will be discussed where relevant to the issues raised on appeal.

[3]    Out of respect for her privacy, we refer to Tapia's victim by the initials used by the Attorney General on appeal.

3

his head and I.A.'s head.  I.A. eventually escaped from the house barefoot and vowed to leave the relationship.

But Tapia continued to harass I.A. by sending her threatening text messages and stalking her.  He called her a "disgusting whore" and threatened that he was "going to tear [her] to pieces."  One morning, Tapia broke down I.A.'s door and searched her house while pointing his revolver at her head.  He told her that if he ever found a man there, he would shoot that man and her.  On another occasion, Tapia told I.A., "you will remember me when I fucking shoot you."

In subsequent days, I.A. allowed Tapia to borrow her car to go to a job interview.  When I.A. went to retrieve the car, Tapia was angry. He forcibly pushed I.A. and verbally abused her.  I.A. left and drove home, to the mobile home park where she was living with her younger brother.  Tapia repeatedly called I.A.; when she eventually answered, he told her that he was coming to her home to "make a scene where you live."

I.A. feared Tapia may hurt her brother, so she left her home and drove to the entrance of the mobile home park to meet Tapia.  When Tapia arrived, he ran at her "mad" and started to punch her.  Tapia pushed I.A. into the passenger seat, sat in the driver's seat, and began hitting her in the face and leg with his revolver.  Tapia ordered I.A. to start the car and he began to drive away, ignoring her pleas to get out.

Tapia warned I.A. that if she tried to escape, he would crash the car and kill them both.  As Tapia drove toward his house, I.A. heard a "big loud thing" and Tapia yelled that he shot himself.  Tapia's leg began to bleed profusely and I.A. asked, "Can I call the ambulance for you?"  Tapia pulled over and allowed her to call 911.  I.A. exited the car to call 911 and Tapia told

4

her to throw the gun into the bushes.  As I.A. called 911, Tapia drove away toward his house, leaving her behind.

Tapia arrived at his house and fell onto the street, where a neighbor rushed over to help and called 911.  Tapia told a responding officer that he was driving with a gun on his lap and accidently shot himself.  Meanwhile, I.A. walked to Tapia's house and, when she arrived, told the officers about the abuse she suffered and requested an emergency protective order.  Later, I.A. helped officers search for the gun, but they failed to locate it.  I.A. returned the next day and found the gun. Officers took custody of the gun.  It had three unexpended rounds and one expended round.

## DISCUSSION

### I.

### *No Instructional Error*

Tapia contends the trial court failed to properly instruct the jury regarding the firearm use allegations under section 12022.5, subdivision (a) and section 12022.53, subdivision (b).  Tapia argues the evidence established he accidentally, rather than intentionally, fired the gun and, thus, the trial court should have (1) modified the pattern instruction to remove the option of finding the enhancement true based on the discharge of a firearm and (2) granted his request for a pinpoint instruction on accident.  We disagree.

A.    *CALCRIM No. 3146*

Both sections 12022.5, subdivision (a), and 12022.53, subdivision (b), apply when a person "personally uses a firearm" in the commission of a felony.  The trial court instructed the jury on both allegations with CALCRIM No. 3146.  The pattern instruction explains that "[s]omeone *personally uses* a firearm if he or she *intentionally* does any of the following: [¶] 1. Displays the

5

weapon in a menacing manner; [¶] 2. Hits someone with the weapon; OR [¶] 3. Fires the weapon." (CALCRIM No. 3146.) (Second italics added.)

Defense counsel asked the trial court to remove the third possibility of "fires the weapon" from the instruction because "[t]he evidence appears to be that when the defendant discharged the firearm he either did it accidentally or he was trying to kill himself." Defense counsel argued CALCRIM No. 3146, unmodified, "allows the *mere firing of a weapon*, period, to be sufficient evidence." (Italics added.) The prosecutor responded he would not be asking the jury to find the allegations true based on the theory that Tapia intentionally fired the weapon, but objected to removing that option because the prosecution's focus on other circumstances to establish the allegations "does not take away the possibility that the jury could believe that the discharge . . . was intentional and not an accident." The court denied the request to modify CALCRIM No. 3146.

" 'In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights.' [Citation.] We determine the correctness of the jury instructions from the entire charge of the court, not from considering only parts of an instruction or one particular instruction." (*People v. Smith* (2008) 168 Cal.App.4th 7, 13.)

"It is error to instruct a jury on a theory of guilt without evidentiary support, but the trial court must instruct the jury on every theory that is supported by substantial evidence. [Citations.] Substantial evidence is evidence that would allow a reasonable jury to find the existence of the facts underlying the instruction, and to find the defendant guilty beyond a

6

reasonable doubt based on the theory of guilt set forth in the instruction. [Citations.] In making this determination, we view the evidence most favorably to the judgment presuming the existence of every fact that reasonably may be deduced from the record in support of the judgment. There is no instructional error when the record contains substantial evidence in support of a guilty verdict on the basis of the challenged theory." (*People v. Jantz* (2006) 137 Cal.App.4th 1283, 1290.) " 'Errors in jury instructions are questions of law, which we review de novo.' " (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 642.)

Tapia makes two related, yet distinct, claims regarding the trial court's alleged error in declining to modify CALCRIM No. 3146. First, he argues the instruction "misled the jury by failing to explain that the element of intending to discharge meant intentionally pulling the trigger in order to discharge or fire the weapon." We do not agree. By its plain language, the instruction required the jury to find Tapia "*intentionally* ... [f]ire[d] the [weapon]," not a "mere firing of a weapon." (Italics added.) Moreover, the jury was instructed with CALCRIM No. 252 that to find the firearm use allegations true, Tapia "must not only commit the prohibited act, but must do so with wrongful intent." CALCRIM No. 252 further explained that Tapia "acts with wrongful intent when he ... *intentionally* does a prohibited act." (Italics added.)

When considering the instructions given as a whole, we assume that jurors are " ' " 'intelligent persons and capable of understanding and correlating all jury instructions which are given.' [Citation.]" ' [Citations.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1148.) Here, the instructions adequately instructed the jury that it could find the firearm enhancement true only if (as an alternative to the other manners of personal use of a

7

firearm not at issue here) it concluded that Tapia fired his weapon *and did so intentionally*. We conclude the jury was not misled.

Second, Tapia argues the instruction should have been modified because "[t]here was no evidence Tapia intentionally tried to shoot the victim or himself, but shot himself instead." The evidence at trial, however, suggests otherwise. I.A. testified that after Tapia shot himself in the leg, "he wanted to shot [sic] himself again in the head." In her 911 call, which was introduced at trial, I.A. told the dispatcher that Tapia "*wanted* to shoot himself." (Italics added.) At trial, I.A. repeatedly confirmed that she made this statement. Additionally, an expert testified the gun is a single action revolver, which requires a person to manually cock the hammer in order to fire the weapon. If the trigger was accidently pulled, the gun would not fire unless the person first cocked the hammer. This expert opinion evidence supports an inference that Tapia's firing of the weapon was not the result of an accidental slip of the finger. Although the jury could reasonably find that Tapia accidentally fired the gun, it could also find that he intended to fire the gun.

While not a major theory at trial, there was sufficient evidence to support the conclusion that Tapia intentionally fired the gun. Defense counsel conceded this fact at trial, noting "the evidence appears to be that when the defendant discharged the firearm he either did it accidentally *or he was trying to kill himself*."[4] (Italics added.) The trial court correctly declined to modify CALCRIM No. 3146.

---

[4]  Tapia does not explain how "trying to kill himself" would not be an intentional act.

## B. *CALCRIM No. 3404*

Tapia further contends the trial court erred when it denied his request to instruct the jury on accident. CALCRIM No. 3404 explains that a defendant is not guilty of a charged crime if he acted "without the intent required for that crime, but acted instead accidentally." The instruction is derived from the statutory defense in Penal Code section 26, that all persons are capable of committing crimes except, among other classes of persons, those "who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." The California Supreme Court has noted the defenses codified at section 26 " 'have historical significance, [but] are now unnecessary restatements, in a defense format, of the requirements of the definitional elements of an offense.' " (*People v. Anderson* (2011) 51 Cal.4th 989, 997 (*Anderson*).)

In other words, accident is not an affirmative defense; it is a theory that attempts to negate the element of criminal intent. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 199, fn. 3.) Thus, "[a] trial court's responsibility to instruct on accident ... generally extends no further than the obligation to provide, *upon request*, a pinpoint instruction relating the evidence to the mental element required for the charged crime." (*Anderson, supra,* 51 Cal.4th at p. 997.) However, " 'a trial court need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation].' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 99.)

We conclude the trial court did not err in declining to give CALCRIM No. 3404 because the instruction merely duplicates the other jury instructions that were properly given on the factual question posed. As we

9

have already explained, CALCRIM No. 3146 and CALCRIM No. 252 adequately instructed the jury that it could find the firearm enhancement true on the basis of a discharge only if it concluded that Tapia fired his weapon *and did so intentionally*.

For these same reasons, Tapia's claim that the alleged error violated his state and federal constitutional rights lacks merit. "Under established law, instructional error relieving the prosecution of the burden of proving beyond a reasonable doubt each element of the charged offense violates the defendant's rights under both the United States and California Constitutions." (*People v. Flood* (1998) 18 Cal.4th 470, 479-480.) Because CALCRIM No. 3404 was entirely duplicative of the other jury instructions, its absence did not deprive the jury of instructions on every essential element of the firearm enhancement or otherwise lessen the prosecution's burden at trial.

Thus, even if we assume that the trial court erred in denying the requested pinpoint instruction, we review a trial court's decision to not give a requested pinpoint instruction under the standard of prejudice set forth in *People v. Watson* (1956) 46 Cal.2d 818. Tapia must show that it is "reasonably probable that had the jury been given defendant's proposed pinpoint instruction, it would have come to a[ ] different conclusion in this case." (*People v. Earp* (1999) 20 Cal.4th 826, 887; see also *People v. Larsen* (2012) 205 Cal.App.4th 810, 830-831.) Tapia has failed to make that showing. As we have already explained, the jury was properly instructed on the requirement that the prosecution prove Tapia personally and *intentionally* fired the firearm.

Moreover, the theory that Tapia intentionally fired the firearm was not a central theory at trial such that any instructional error on that factual

10

question likely had no effect on the jury's deliberations. Instead, during closing argument, the prosecution focused on the alternative manners for establishing Tapia's personal use of a firearm, based on evidence that Tapia intentionally displayed the firearm in a menacing manner and repeatedly hit I.A. with the firearm. I.A.'s testimony, when considered along with other evidence of Tapia's guilt, established beyond a reasonable doubt that Tapia personally used a firearm in those manners. Considering the record as a whole, we conclude the effect of CALCRIM No. 3404 on the jury's deliberations would have been insignificant such that it is not reasonably probable the jury would have reached a different result if it had been instructed differently. Tapia suffered no prejudice by the trial court's refusal to give a duplicative pinpoint instruction.

## II.

### *No Prosecutorial Misconduct*

Tapia faults the prosecutor with committing misconduct during closing argument. He contends that the prosecutor improperly referred to him repeatedly as a "monster" and appealed to the jurors' emotions by asking the jurors to place themselves in the victim's position. Considering the totality of the prosecutor's closing argument and Tapia's failure to object, we see no error.

A.    *Prosecutor's Closing Argument*

The prosecutor began his argument by defining a "monster" as "[s]omeone that knows a person's weaknesses and uses those weaknesses against them, someone that causes harm, knows they're causing harm, but continues to cause that harm. Someone that's angry, someone that's physical. Someone that's violent. That's what a monster is." The prosecutor then applied that definition to Tapia and argued, *"The defendant, Jaime*

11

*Tapia, was [I.A.]'s monster.*" (Italics added.) On appeal, Tapia highlights five other times the prosecutor used the word "monster" to describe Tapia.

Tapia's counsel did not object to the prosecutor's use of the term "monster" in closing argument. "As a general rule, ' "[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." ' " (*People v. Centeno* (2014) 60 Cal.4th 659, 674 (*Centeno*).) However, " '[a] defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' " (*Ibid.*) Tapia makes that claim here. "He bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*Ibid.*)

Tapia fails to demonstrate any deficient performance by his counsel for failing to object because the record does not disclose any misconduct warranting an objection. Although he cites several decisions in which a court expresses disapproval of epithets or name-calling, each of those decisions notes that the prosecutor's conduct did not rise to the level of prejudicial misconduct. (See, e.g., *Darden v. Wainwright* (1986) 477 U.S. 168, 179 [prosecutor's closing argument "deserves the condemnation it has received" but did not deprive defendant of a fair trial]; *People v. McDermott* (2002) 28 Cal.4th 946, 1002 [noting that the Supreme Court does not "condone the use of opprobrious terms in argument, but such epithets are not necessarily misconduct when they are reasonably warranted by the evidence"].)

12

Instead of liberally finding prosecutorial misconduct on the basis of colorful or strong language in closing argument, the California Supreme Court has routinely held that prosecutors may permissibly use a " 'wide range of descriptive comment and the use of epithets which are reasonably warranted by the evidence.' " (*People v. Farnam* (2002) 28 Cal.4th 107, 168 (*Farnam*); *People v. Harrison* (2005) 35 Cal.4th 208, 245-246 [multiple uses of epithets and referring to defendant as "evil" was within the permissible scope of closing argument].) In light of the evidence of Tapia's violent conduct targeted at I.A., the prosecutor's use of the term "monster" to describe Tapia fell within the permissible scope of closing argument.

In asserting otherwise, Tapia relies on a recent decision of this court, *People v. Arredondo* (2018) 21 Cal.App.5th 493 (*Arredondo*), in which we held that the prosecutor's misconduct during closing argument warranted reversal of the defendants' convictions. In *Arredondo*, the prosecutor repeatedly referred to the defendants as "cockroaches," which Tapia likens to the prosecutor's use of the term "monster" in this proceeding. (*Id.* at pp. 502-503.) *Arredondo* is entirely distinguishable.

First, we carefully noted in *Arredondo* that the "problem with the prosecutor's use of the cockroach epithet . . . is not that it plainly denigrated and dehumanized defendants." (*Arredondo, supra,* 21 Cal.App.5th at p. 504.) Instead, we held that the prosecutor committed misconduct by referring to the defendants and other "cockroaches" like them as a "disgusting group which poses an ongoing threat to the entire community" rather than individuals to be judged on their own actions. (*Ibid.*) It was this notion of guilt by association that we held was improper, *not* the use of the dehumanizing epithet. (*Ibid.*) Second, we held the misconduct was harmless in most respects and prejudicial *only* when applied to the allegation that the

13

defendants committed murder for the benefit of a street gang given the prosecutor's improper theme of collective guilt. (*Id.* at p. 506.) Collective guilt is not at issue in this case. Accordingly, our holding in *Arredondo* has no bearing on the issues raised in this appeal.

We conclude from our review of the record that the prosecutor's use of the term "monster" to describe Tapia was within the permissible scope of closing argument. Moreover, even if we assume the argument was improper and Tapia's counsel was ineffective for failing to object, we cannot conclude that if defense counsel had objected, it is reasonably probable the jury would have reached a more favorable verdict. The evidence of Tapia's guilt was overwhelming. It is not likely that the jury reached its verdict due to inflamed passion or prejudice based on the prosecutor's references to Tapia as a "monster."

B. *Prosecutor's Rebuttal Argument*

Tapia also asserts the prosecutor erred in his rebuttal argument when he responded to an argument of defense counsel by asking the jury to place themselves in the position of I.A. when deliberating. During his closing argument, Tapia's counsel asked the jury to consider if they would like being "dragged into a court of law with a flag and a judge and a prosecutor and spectators and a jury, and how would you like it if you were alleged to have done wrong, and they're making the case against you with [I.A.]?"

In response, the prosecutor asked the jury to apply "that same line of analysis" when considering I.A.'s credibility. The prosecutor asked the jury: "How would you feel if someone dragged you into court and they asked you -- let's just say it's a sexual assault case and they asked you to describe the last time you had sex with your partner. Or, like [I.A.], you're put on the stand and you're asked can you tell us about that time that he shoved a gun in your

14

mouth . . . . How would you feel if you had to do that? [¶] If you think [I.A.]'s a liar, she sure had some interesting stories and made up a lot of stuff for you to believe." Tapia argues this statement improperly appealed to the jurors' emotions by asking them to stand in I.A.'s place when deliberating.[5]

A prosecutor's "appeal to the jury to view the crime through the eyes of the victim is misconduct . . . ." (*People v. Stansbury* (1993) 4 Cal.4th 1017, 1057.) " '[I]t is generally improper to ask jurors to step into the victim's shoes and imagine his or her suffering.' " (*Farnam, supra,* 28 Cal.4th at p. 168.) However, "[t]here are situations in which the prosecutor has been allowed to make comments in rebuttal that would otherwise be improper, when such comments are fairly responsive to the argument of defense counsel." (*People v. Sandoval* (1992) 4 Cal.4th 155, 193.) Here, the prosecutor's rebuttal argument was in direct response to defense counsel's argument. By asking the jury to step into Tapia's shoes, defense counsel invited the rebuttal argument from the prosecution to, likewise, consider I.A.'s circumstances.

The prosecutor's argument, however, was distinct from arguments that have been found to be an improper appeal to the jury's emotions. We find the Supreme Court's decision in *People v. Lopez* (2008) 42 Cal.4th 960 (*Lopez*) particularly instructive. In *Lopez*, the defendant was a Catholic priest charged with committing a range of sexual offenses on several teenage boys, who testified at trial regarding the defendant's actions. (*Id.* at pp. 963-965.) During closing argument, the prosecutor told the jury she expected defense counsel to argue the victims were not credible because they could not

---

[5] Tapia's counsel did not object to this line of argument at trial and the issue is therefore forfeited. On appeal, however, Tapia asks this court to consider whether his trial counsel was ineffective for failing to object. We consider the claim in that context.

15

remember certain details during their trial testimony. (*Id.* at p. 968.) To defend their credibility, the prosecutor asked the jurors to " '[p]ut yourself in that situation' " and consider whether they would remember precise details four years later. (*Id.* at pp. 968-969.) Regarding another witness, the prosecutor asked the jurors to consider whether the witness's description of a room was credible by imagining a hypothetical in which they visited a bedroom and had to describe it later. (*Id.* at p. 969.)

The Court of Appeal in *Lopez* concluded the prosecutor committed misconduct in the closing argument by " 'asking the jurors to stand in the shoes of the victim witnesses.' " (*Lopez*, *supra*, 42 Cal.4th at p. 969.) The Supreme Court, however, disagreed and reversed the appellate court. Although it recognized the general rule that a prosecutor may not invite the jury to view the case through the victim's eyes, the Supreme Court reasoned that the prosecutor's closing argument did *not* ask the jury to do so. "Rather, she gave two hypotheticals in which the victims did not at all figure." (*Id.* at p. 970.) In those hypotheticals, the prosecutor asked the jurors to place themselves in situations similar to those experienced by the victims to consider how well they would remember details of an incident or the particular features of a room if they were testifying years later. (*Ibid.*) The Supreme Court explained that the prosecutor's argument was not improper because "[i]n neither scenario did the prosecutor ask the jurors to stand in the shoes of the victims, so as to evoke jury sympathy for the victims." (*Ibid.*)

Although not precisely analogous, the closing argument at issue in *Lopez* bears striking similarity to the prosecutor's argument here. The prosecutor asked the jury to consider how it would feel to be "dragged" into court to testify about a hypothetical traumatic incident when judging whether I.A. was likely to have fabricated the incidents only to subject herself

16

to the difficult trial process.  Like the argument in *Lopez*, the prosecutor was not attempting to evoke sympathy for the victim or asking the jurors to view the crime from I.A.'s perspective, but rather asking the jury to judge I.A.'s credibility based on their own understanding of reasonable human behavior in difficult circumstances like those experienced by I.A.  As the Supreme Court explained in *Lopez*, such argument is not misconduct.

But even assuming the prosecutor's comment was improper and Tapia's counsel was ineffective in failing to object, we find that any error was harmless.  Tapia must show that, but for his counsel's alleged error in failing to object, there is a reasonable probability the jury would have reached a different verdict.  (*Centeno*, *supra*, 60 Cal.4th at p. 676.)  The prosecutor's comment, suggesting that the jurors place themselves in a hypothetical situation like I.A.'s situation, was brief and not a central theme of his rebuttal.  Given the overwhelming evidence of Tapia's guilt, it is unlikely this brief comment led the jury to reach its guilty verdict.  Accordingly, Tapia's claim of prejudicial error lacks merit.

### III.

*Tapia's Convictions of Lesser Included Offenses of Carjacking and Kidnapping Are Vacated*

Tapia contends his convictions for carjacking and kidnapping must be reversed because they are lesser included offenses of the offense of kidnapping during a carjacking, for which he was also convicted.  The Attorney General concedes this issue and we agree.  "When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the

17

conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736; see also *People v. Moran* (1970) 1 Cal.3d 755, 763.)

As both parties agree, the offense of carjacking, set forth in section 215, is a lesser included offense of the offense of kidnapping during a carjacking pursuant to section 209.5. (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1416; *People v. Contreras* (1997) 55 Cal.App.4th 760, 763-764; see also *People v. Medina* (2007) 41 Cal.4th 685, 693.) Similarly, the offense of kidnapping under section 207 is also a lesser included offense of kidnapping during a carjacking. (*People v. Stringer* (2019) 41 Cal.App.5th 974, 979, 988; *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1368.)

Accordingly, we accept the Attorney General's concession and conclude the convictions for kidnapping and carjacking must be vacated.[6] Because the trial court has no discretion to exercise in this regard and vacating these convictions would have no effect on the remainder of Tapia's sentence, we may modify the judgment rather than remand for resentencing.

## IV.

### *Unauthorized Sentence*

On appeal, the Attorney General notes a sentencing discrepancy between the trial court's oral pronouncement of judgment and the minute order from the sentencing hearing that led to an unauthorized sentence. Tapia does not dispute this issue and we agree the sentence must be corrected.

For the offense of carjacking during kidnapping, the jury found true the firearm enhancement allegations pursuant to both section 12022.5,

---

[6] Because we vacate the kidnapping conviction, we need not address Tapia's argument on appeal concerning the jury instruction on that offense.

subdivision (a) and section 12022.53, subdivision (b).[7] At the sentencing hearing, despite Tapia's request that it do so, the trial court indicated it was declining to exercise its discretion to strike the firearm enhancement allegations. The court then imposed a 10-year enhancement for the section 12022.53, subdivision (b) allegation but did not address the section 12022.5, subdivision (a) enhancement. However, the minute order from the hearing states that the trial court struck the section 12022.5, subdivision (a) allegation. The abstract of judgment does not mention the section 12022.5, subdivision (a) allegation.

When there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement of judgment controls. (*People v. Walz* (2008) 160 Cal.App.4th 1364, 1367, fn. 3.) Although the trial court had discretion to strike the enhancement, it expressly declined to do so at the sentencing hearing. Accordingly, the court was required to impose and then stay the section 12022.5, subdivision (a) enhancement. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1127 [interpreting section 12022.53, subdivision (f) to direct "that only one enhancement may be imposed and then executed per person for each crime, and allow[] a trial court to impose and then stay all other prohibited enhancements."].)

This error, however, does not require reversal. The trial court made clear at the sentencing hearing that it was not striking either firearm enhancement, that it believed a 10-year firearm enhancement was proper, and that it was "going with the high term" for all offenses and enhancements when exercising its discretion. Because the trial court made clear that it

---

[7] The jury made similar findings for the offenses of kidnapping and carjacking. However, as we previously explained, those convictions must be vacated and, therefore, any sentencing error in relation to those convictions is now moot.

19

would not strike the enhancement and intended to impose the highest term when it could exercise its discretion, remanding the matter for resentencing would be an idle act such that it is appropriate for us to modify the sentence on appeal. (See, e.g., *People v. Francis* (2017) 16 Cal.App.5th 876, 887.) Accordingly, we modify the judgment to impose and stay a 10-year enhancement under section 12022.5, subdivision (a) on the kidnapping during a carjacking conviction.

## DISPOSITION

The judgment is modified to vacate the convictions, and their associated enhancements, for kidnapping in violation of section 207 and carjacking in violation of section 215 and to impose and stay a 10-year sentence enhancement under section 12022.5, subdivision (a) on the offense of kidnapping during a carjacking in violation of section 209.5, subdivision (a). As modified, the judgment is affirmed. Upon issuance of the remittitur, the trial court is directed to prepare a corrected minute order consistent with the views expressed in this opinion, amend the abstract of judgment, and to send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


DO, J.

WE CONCUR:


BENKE, Acting P. J.


GUERRERO, J.